**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |  |
|---|---|---|
| DAVID A. FOLEY, | ) ) ) ) | |
| *Plaintiff,* | ) ) ) | |
| *v.* | ) ) | Civil Action No. 4:21-cv-01098-O |
| JOSEPH R. BIDEN, JR., in his official capacity as PRESIDENT OF THE UNITED STATES, | ) ) ) ) ) | |
| *Defendant.* | ) ) ) | |

**DEFENDANT'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 3

I.      The COVID-19 Pandemic................................................................................... 3

II.     The Development and Authorization of COVID-19 Vaccines...................................... 4

III.    Executive Order No. 14043 ................................................................................ 6

IV.     This Lawsuit ..................................................................................................... 8

ARGUMENT..................................................................................................................... 9

I.      The Court Lacks Jurisdiction. ............................................................................. 9

        A.      The Court Lacks Jurisdiction to Enter Declaratory or Injunctive Relief Against the
                President. ................................................................................................ 9

        B.      Plaintiffs' Claims Are Precluded By The Civil Service Reform Act. ........................ 11

        C.      Plaintiff's Claims Are Unripe Because He Has Neither Been Denied an Exception
                Nor Been Subjected to Discipline.............................................................. 13

II.     Plaintiff Is Not Entitled to Extraordinary Injunctive Relief. ..................................... 14

        A.      Plaintiff Does Not Face an Imminent Threat of Irreparable Harm......................... 15

        B.      Plaintiff Is Not Likely to Succeed on the Merits. ....................................... 17

                1.      Count One: The Executive Order Does Not Violate the First Amendment. . 17

                2.      Count Two:  The Executive Order Violates Neither Procedural Due Process
                        Nor the Administrative Procedure Act......................................... 18

                3.      Count Three:  The Executive Order Does Not Violate Substantive Due
                        Process or Equal Protection. ................................................. 19

        C.      The Injunction Plaintiff Seeks Is Contrary to the Public Interest. ........................... 23

III.    Any Relief Granted Should Be Narrowly Tailored. ................................................. 25

CONCLUSION.................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Trump*,
   753 F. App'x 201 (5th Cir. 2018) ....................................................................................11

*American Fed'n of Gov't Emps. v. O'Connor*,
   747 F.2d 748 (D.C. Cir. 1984) ........................................................................................14

*Auracle Homes, LLC v. Lamont*,
   478 F. Supp. 3d 199 (D. Conn. 2020) .............................................................................24

*Austral Oil Co. v. Nat'l Park Serv.*,
   982 F. Supp. 1238 (N.D. Tex. 1997) ...............................................................................11

*Bridges v. Houston Methodist Hosp.*,
   No. 21-1774, 2021 WL 2399994 (S.D. Tex. June 12, 2021).............................................20

*Broadway v. Block*,
   694 F.2d 979 (5th Cir. 1982)............................................................................................12

*Cantu-Delgadillo v. Holder*,
   584 F.3d 682 (5th Cir. 2009)............................................................................................20

*Crane v. Napolitano*,
   No. 3:12-CV-3247-O, 2013 WL 1744422 (N.D. Tex. Apr. 23, 2013)..............................11

*Crane v. Napolitano*,
   No. 3:12-CV-3247-O, 2013 WL 8211660 (N.D. Tex. July 31, 2013) ........................*passim*

*Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*,
   497 U.S. 261 (1990)..........................................................................................................20

*Dalton v. Specter*,
   511 U.S. 462 (1994)..........................................................................................................10

*Doe v. Zucker*,
   520 F. Supp. 3d 217 (N.D.N.Y. 2021) ........................................................................20, 21

*EHO360, LLC v. Opalich*,
   No. 3:21-CV-724-B, 2021 WL 3054867 (N.D. Tex. July 20, 2021)................................17

*Elgin v. Dep't of Treasury*,
   567 U.S. 1 (2012) .........................................................................................................11, 12

*Fleming v. Spencer*,
   718 F. App'x 185 (4th Cir. 2018) ................................................................................11, 12

ii

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992) .................................................................................................. 9, 10, 11

*Garcetti v. Ceballos*,
   547 U.S. 410 (2006) ................................................................................................................18

*Garcia v. United States*,
   680 F.2d 29 (5th Cir. 1982) ...........................................................................................*passim*

*Gill v. Whitford*,
   138 S. Ct. 1916 (2018) ............................................................................................................25

*Gonzalez v. Manjarrez*,
   558 F. App'x 350 (5th Cir. 2014) ...........................................................................................11

*Griener v. United States*,
   900 F.3d 700 (5th Cir. 2018) ..................................................................................................13

*Harris v. Hahn*,
   827 F.3d 359 (5th Cir. 2016) ..................................................................................................22

*Harris v. Univ. of Mass., Lowell*,
   No. 21-11244, 2021 WL 3848012 (D. Mass. Aug. 27, 2021) ................................................21

*Heller v. Doe ex rel. Doe*,
   509 U.S. 312 (1993) ................................................................................................................22

*Holland v. Nat'l Mining Ass'n*,
   309 F.3d 808 (D.C. Cir. 2002) ................................................................................................25

*House the Homeless, Inc. v. Widnall*,
   94 F.3d 176 (5th Cir. 1996) ....................................................................................................15

*Humana, Inc. v. Jacobson*,
   804 F.2d 1390 (5th Cir. 1986) ................................................................................................15

*Integrity Collision Ctr. v. City of Fulshear*,
   837 F.3d 581 (5th Cir. 2016) ..................................................................................................23

*Irizarry v. United States*,
   427 F.3d 76 (1st Cir. 2005) ....................................................................................................12

*Jacobson v. Massachusetts*,
   197 U.S. 11 (1905) ..................................................................................................................20

*Jordan v. Fisher*,
   813 F.3d 216 (5th Cir. 2016) .............................................................................................15, 23

*Jordan v. Fisher*,
   823 F.3d 805 (5th Cir. 2016) ..................................................................................................15

*Jwalapuram v. Mayorkas*,
   No. 3:21-CV-699-M, 2021 WL 2695369 (N.D. Tex. Mar. 31, 2021) .................................16

*Kendall v. U.S. ex rel. Stokes*,
   37 U.S. (12 Pet.) 524 (1838) ..................................................................................................10

*Kitty Hawk Aircargo, Inc. v. Chao*,
   418 F.3d 453 (5th Cir. 2005) ............................................................................................ 4, 5

*Klaassen v. Trs. of Ind. Univ.*,
   --- F. Supp. 3d ----, 2021 WL 3073926 (N.D. Ind. July 18, 2021) .........................20, 21, 22

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994) ................................................................................................................25

*Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*,
   No. 08-547, 2009 WL 175132 (E.D. Tex. Jan. 23, 2009) .....................................................15

*Mississippi v. Johnson*,
   71 U.S. (4 Wall.) 475 (1866) ............................................................................................ 9, 10

*Morgan v. Fletcher*,
   518 F.2d 236 (5th Cir. 1975) ..................................................................................................16

*Nat'l Treasury Emps. Union v. Nixon*,
   492 F.2d 587 (D.C. Cir. 1974) ...............................................................................................10

*Nat'l Wildlife Fed'n v. United States*,
   626 F.2d 917 (D.C. Cir. 1980) ...............................................................................................10

*Newdow v. Bush*,
   355 F. Supp. 2d 265 (D.D.C. 2005) .........................................................................................9

*Newdow v. Roberts*,
   603 F.3d 1002 (D.C. Cir. 2010) ...............................................................................................9

*Nixon v. City of Houston*,
   511 F.3d 494 (5th Cir. 2007) ..................................................................................................18

*Nken v. Holder*,
   556 U.S. 418 (2009) ................................................................................................................23

*Norris v. Stanley*,
   --- F. Supp. 3d. ---, No. 21-756, 2021 WL 3891615 (W.D. Mich. Aug. 31, 2021) .....................21, 22

*Parish of Jefferson*,
234 F.3d 192 (5th Cir. 2000) ................................................................................................14

*Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*,
748 F.3d 583 (5th Cir. 2014) ...............................................................................................22

*Prince v. Massachusetts*,
321 U.S. 158 (1944) ............................................................................................................20

*Rollins v. Marsh*,
937 F.2d 134 (5th Cir. 1991) ...............................................................................................11

*Roman Cath. Diocese of Brooklyn v. Cuomo*,
141 S. Ct. 63 (2020) ...................................................................................................... 21, 23

*Sample v. Morrison*,
406 F.3d 310 (5th Cir. 2005) ...............................................................................................14

*Sampson v. Murray*,
415 U.S. 61 (1974) ..............................................................................................................16

*Steadman v. Governor, U.S. Soldiers' & Airmen's Home*,
918 F.2d 963 (D.C. Cir. 1990) ...................................................................................... 11, 12

*Swan v. Clinton*,
100 F.3d 973 (D.C. Cir. 1996) ........................................................................................ 9, 10

*Talleywhacker, Inc. v. Cooper*,
465 F. Supp. 3d 523 (E.D.N.C. 2020) .................................................................................24

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ..............................................................................................................4

*Tigges v. Northam*,
473 F. Supp. 3d 559 (E.D. Va. 2020) ..................................................................................24

*TJM 64, Inc. v. Harris*,
475 F. Supp. 3d 828 (W.D. Tenn. 2020) ..............................................................................24

*Trump v. Hawaii*,
138 S. Ct. 2392 (2018) .........................................................................................................25

*Tubesing v. United States*,
810 F.3d 330 (5th Cir. 2016) ...............................................................................................12

*United States v. Fausto*,
484 U.S. 439 (1988) ............................................................................................................11

*United Transp. Union v. Foster,*
  205 F.3d 851 (5th Cir. 2000)................................................................................................14

*Washington v. Glucksberg,*
  521 U.S. 702 (1997)..............................................................................................................20

*Washington v. Harper,*
  494 U.S. 210 (1990)..............................................................................................................20

*Watchguard Techs., Inc. v. Valentine,*
  433 F. Supp. 2d 792 (N.D. Tex. 2006)...............................................................................15

*White v. Carlucci,*
  862 F.2d 1209 (5th Cir. 1989).............................................................................................16

*Williams v. Dall. Indep. Sch. Dist.,*
  480 F.3d 689 (5th Cir. 2007)...............................................................................................18

*Wilson v. Tregre,*
  787 F.3d 322 (5th Cir. 2015)...............................................................................................18

*Winter v. Nat. Res. Def. Council,*
  555 U.S. 7 (2008) ..................................................................................................................14

*Workman v. Mingo Cnty. Bd. of Educ.,*
  419 F. App'x 348 (4th Cir. 2011) .......................................................................................21

*Zucht v. King,*
  260 U.S. 174 (1922)..............................................................................................................20

**Statutes**

5 U.S.C. § 552a .............................................................................................................................16

5 U.S.C. § 702 ...............................................................................................................................10

5 U.S.C. § 1212 .............................................................................................................................12

5 U.S.C. § 2301 .............................................................................................................................12

5 U.S.C. § 2302 .............................................................................................................................11

5 U.S.C. § 7301 .............................................................................................................................23

5 U.S.C. § 7512 .............................................................................................................................12

5 U.S.C. § 7702 .............................................................................................................................11

5 U.S.C. § 7703 .............................................................................................................................11

21 U.S.C. § 360bbb-3 ...........................................................................................................5

42 U.S.C. § 262 ......................................................................................................................5

**Regulations**

29 C.F.R. § 1605.2(c)(1) ................................................................................................ 13, 19

Declaring a Nat'l Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak,
  Proclamation No. 9994,
  85 Fed. Reg. 15,337 (Mar. 18, 2020) ...........................................................................3

Emergency Use Authorization Declaration,
  85 Fed. Reg. 18,250 (Apr. 1, 2020) ...............................................................................5

Exec. Order 14043,
  86 Fed. Reg. 50,989 (Sept. 14, 2021) ..............................................................1, 6, 18, 22

**Other Authorities**

11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
  *Federal Practice and Procedure* § 2948.1 (3d ed. 2013) ..................................................15

Aug. 12, 2021 Letter of Authorization from FDA to ModernaTX, Inc.,
  https://perma.cc/T7WX-QEYU.........................................................................................5

Aug. 23, 2021 Letter Approving Biologics License Application from FDA to BioNTech Mfg.,
  https://perma.cc/R3D3-M8V8...........................................................................................5

Aug. 23, 2021 Letter of Authorization from FDA to Pfizer Inc.,
  https://perma.cc/25TT-F4V6........................................................................................ 5, 6

CDC, COVID DATA Tracker Home (updated Oct. 4, 2021),
  https://perma.cc/9L23-DY5E.............................................................................................4

CDC, COVID DATA Tracker: COVID-19 Integrated County View (updated Oct. 4, 2021),
  https://perma.cc/34MU-ABWK..........................................................................................4

CDC, Delta Variant: What We Know About the Science (updated Aug. 26, 2021),
  https://perma.cc/4RW6-7SGB.............................................................................................4

CDC, How COVID-19 Spreads (updated July 14, 2021),
  https://perma.cc/63AZ-D2DQ......................................................................................... 3, 4

CDC, Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety (updated June 23,
  2021),
  https://perma.cc/X48A-HSD4.............................................................................................4

CDC, Understanding mRNA COVID-19 Vaccines (updated Mar. 4, 2021),
https://perma.cc/4DQT-8WT2 ................................................................................4

CDC, Understanding Viral Vector COVID-19 Vaccines (updated Sept. 9, 2021),
https://perma.cc/9EF5-3JD7 ................................................................................4

Centers for Disease Control and Prevention ("CDC"), COVID Data Tracker Weekly Review
(updated Oct. 1, 2021),
https://perma.cc/F455-B7GA .................................................................................1

Comirnaty and Pfizer-BioNTech COVID-19 Vaccine Fact Sheet (revised Aug. 23, 2021),
https://perma.cc/XCX5-54RC ...............................................................................6

EEOC, What You Should Know: Workplace Religious Accommodation (Mar. 6, 2014),
https://perma.cc/QND4-8B6G ............................................................................19

FDA, Comirnaty Approved Prescribing Information,
https://perma.cc/P87N-YGX2 ...............................................................................6

FDA, News Release – FDA Approves First COVID-19 Vaccine (Aug. 23, 2021),
https://perma.cc/C4DD-PWE5 .......................................................................... 5, 6

FDA, What Is Gene Therapy? (updated July 25, 2018),
https://perma.cc/3ADC-VPYE .............................................................................21

June 10, 2021 Letter of Authorization from FDA to Janssen Biotech, Inc.,
https://perma.cc/WX3L-PYVE ...............................................................................5

Pandemic Response Accountability Committee, Top Challenges Facing Federal Agencies (June
2020),
https://perma.cc/754N-56S9 ................................................................................24

Task Force, COVID-19 Workplace Safety: Agency Model Safety Principles (updated Sept. 13, 2021),
https://perma.cc/7NZX-KUE6 ...............................................................................7

Task Force, Frequently Asked Questions ("FAQs"), Vaccinations, Limited Exceptions to
Vaccination Requirement (last visited Oct. 5, 2021),
https://perma.cc/7WXN-FQBK.......................................................................... 2, 7

Template: Request for a Medical Exception to the COVID-19 Vaccination Requirement (last visited
Oct. 5, 2021),
https://perma.cc/95US-4Q99 .................................................................................7

Template: Request for a Religious Exception to the COVID-19 Vaccination Requirement (last
visited Oct. 5, 2021),
https://perma.cc/43FA-J49F ...................................................................................7

**INTRODUCTION**

The United States is in the midst of the most serious public health crisis it has faced in at least a century. To date, COVID-19 has infected more than 43 million Americans, hospitalized more than 3 million, and killed approximately 700,000. *See* Centers for Disease Control and Prevention ("CDC"), COVID Data Tracker Weekly Review (updated Oct. 1, 2021), https://perma.cc/F455-B7GA. More than a year and a half into the COVID-19 pandemic, approximately 100,000 new cases are being reported in the United States every day. *See id.*

Since the pandemic's earliest days, there has been broad agreement—from public health experts and leaders across the political spectrum—that it will not end until safe and effective vaccines are broadly administered across the population. Three such vaccines are now widely available in the United States: an mRNA vaccine developed by Pfizer, Inc. and BioNTech; another mRNA vaccine developed by Moderna TX, Inc.; and a viral vector vaccine developed by Janssen Biotech, Inc., which is owned by Johnson & Johnson ("J&J"). Hundreds of millions of doses have been administered, and there is no question that the vaccines are safe and highly effective. Yet as of this week, only 67% of adults in the United States are fully vaccinated. *See* CDC, COVID Data Tracker Weekly Review. And in September 2021—many months after COVID-19 vaccines became widely available to individuals at no cost—nearly 50,000 Americans died of COVID-19. *See id.*

The illness and mortality caused by COVID-19 have led to serious disruptions for employers across the United States, and the federal government is no exception. On September 9, 2021, President Biden therefore issued an Executive Order providing that the federal government would, with limited exceptions, require its employees to be vaccinated for COVID-19. *See* Exec. Order 14043, 86 Fed. Reg. 50,989 (Sept. 14, 2021). The Executive Order indicates that it is "subject to such exceptions as required by law," *id.* at 50,989, and the Safer Federal Workforce Task Force ("Task Force") has issued guidance making clear that employees may be eligible for exceptions on the basis

1

of a religious objection or a disability.  *See* Task Force, Frequently Asked Questions ("FAQs"), Vaccinations, Limited Exceptions to Vaccination Requirement, (last visited Oct. 5, 2021), https://perma.cc/7WXN-FQBK ("Exception FAQs").

Plaintiff David A. Foley is an attorney at the National Labor Relations Board ("NLRB") who does not wish to be vaccinated, and he seeks declaratory and injunctive relief against the President to invalidate the Executive Order.  Yet his claims are brought against the wrong Defendant, at the wrong time, and in the wrong forum.  As explained below, whatever claims Plaintiff might have brought against NLRB, the President is not subject to declaratory and injunctive relief in his official capacity. In addition, Plaintiff's claims, all of which relate to the terms of his federal employment, are precluded by the Civil Service Reform Act ("CSRA")—as this Court has held in very similar circumstances.  *See Crane v. Napolitano*, No. 3:12-CV-3247-O, 2013 WL 8211660 (N.D. Tex. July 31, 2013) (O'Connor, J.), *aff'd*, 783 F.3d 244 (5th Cir. 2015).  Finally, because Plaintiff has neither applied for nor been denied an exception, nor been subjected to any discipline, his claims are unripe.

In addition to these jurisdictional defects, Plaintiff fails to satisfy any of the other requirements for a preliminary injunction.  *First*, Plaintiff is not at imminent risk of irreparable injury.  He claims to face a "Hobson's choice" between receiving an unwanted mRNA vaccine and being discharged for refusing one, but he ignores his option to receive a single dose of the non-mRNA vaccine developed by Janssen/J&J.  Alternatively, he could request an exception to the vaccination requirement.  In any event, the Fifth Circuit has repeatedly held that a federal employee's discharge—the most severe penalty Plaintiff could face here—does not constitute irreparable harm because reinstatement with back pay is an adequate legal remedy.  *See, e.g.*, *Garcia v. United States*, 680 F.2d 29, 31 (5th Cir. 1982). And there is certainly no need to litigate this case in a matter of days; Plaintiff could fully comply with the vaccination requirement by receiving the J&J vaccine as late as November 8, 2021, and if he requests an exception, he will not face discipline while his request remains pending.

2

*Second*, Plaintiff is exceedingly unlikely to succeed on the merits of his claims. Count One alleges compelled speech in violation of the First Amendment. This claim fails because it is based on speculation that NLRB will require Plaintiff to support or enforce the vaccination requirement, and because a federal employee's job-related speech does not enjoy First Amendment protection. Count Two, which faults the government for failing to provide guidance about how an employee can seek an exception, fails because such guidance already exists. And Count Three fails because, for more than a century, courts have uniformly upheld vaccination requirements as rationally related to the government's legitimate interest in promoting health and safety.

*Third*, the equities and the public interest weigh heavily against the entry of preliminary injunctive relief. Granting the requested injunction would harm important public interests in slowing the spread of COVID-19 within the federal workforce, promoting the efficiency of the federal civil service, and handling government employment disputes through administrative procedures established by Congress. Denying the injunction is unlikely to harm Plaintiff because he does not face an imminent prospect of workplace discipline and could obtain adequate remedies for any unlawful discharge. Accordingly, Plaintiff's motion for preliminary injunction should be denied.

## BACKGROUND

### I.    The COVID-19 Pandemic

In January 2020, the emergence of a novel coronavirus later named SARS-CoV-2 caused the Secretary of Health and Human Services ("HHS") to declare a public health emergency, and in March 2020, the President declared a national emergency to contain and combat the virus. *See* Declaring a Nat'l Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak, Proclamation No. 9994, 85 Fed. Reg. 15,337 (Mar. 18, 2020). SARS-CoV-2 causes a respiratory disease known as COVID-19, *id.*, which "spreads when an infected person breathes out droplets and very small particles that contain the virus," CDC, How COVID-19 Spreads (updated July 14, 2021),

3

https://perma.cc/63AZ-D2DQ.

In July 2021, the United States experienced "a rapid and alarming rise in . . . COVID-19 case and hospitalization rates," driven by an especially contagious strain of SARS-CoV-2 known as the Delta variant. *See* CDC, Delta Variant: What We Know About the Science (updated Aug. 26, 2021), https://perma.cc/4RW6-7SGB. As of the filing of this brief, community transmission rates of SARS-CoV-2 remain high in 48 states and in over 90% of U.S. counties.[1] *See* CDC, COVID DATA Tracker Home (updated Oct. 4, 2021), https://perma.cc/9L23-DY5E; CDC, COVID DATA Tracker: COVID-19 Integrated County View (updated Oct. 4, 2021), https://perma.cc/34MU-ABWK.

## II.    The Development and Authorization of COVID-19 Vaccines

Shortly after COVID-19 emerged, Pfizer and BioNTech began developing a COVID-19 vaccine, as did Moderna. The Pfizer-BioNTech and Moderna vaccines both use messenger ribonucleic acid ("mRNA"), which causes the recipient's cells to make a harmless piece of the "spike protein" found in the SARS-CoV-2 virus. *See* CDC, Understanding mRNA COVID-19 Vaccines, https://perma.cc/4DQT-8WT2 (updated Mar. 4, 2021). The recipient's immune system identifies the protein as foreign and responds by making antibodies. *Id.* These mRNA vaccines "do not affect or interact with [the recipient's] DNA in any way." *Id.*

A third COVID-19 vaccine has been developed by Janssen/J&J. This vaccine does not use mRNA; instead, it is a viral vector vaccine. *See* CDC, Johnson & Johnson's Janssen COVID-19 Vaccine Overview and Safety, https://perma.cc/X48A-HSD4 (updated June 23, 2021). The J&J vaccine works by introducing a harmless virus into the recipient's body, which also causes the body to make a piece of the spike protein found in the SARS-CoV-2 virus. *See* CDC, Understanding Viral Vector COVID-19 Vaccines, https://perma.cc/9EF5-3JD7 (updated Sept. 9, 2021). The recipient's

---

[1] The Court may take judicial notice of these statistics and other factual information available on government websites. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322–23 (2007); *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005).

4

immune system identifies the protein as foreign and responds by making antibodies. *Id.*

The Food and Drug Administration ("FDA") has authority to review and approve vaccines. *See* 42 U.S.C. § 262(a)(1), (i)(1). In an emergency, FDA may issue an "emergency use authoriz[ation]" ("EUA"), 21 U.S.C. § 360bbb-3, which authorizes the marketing of vaccines (and other FDA-regulated products) "intended for use" in responding to the emergency. In March 2020, the Secretary of HHS determined that "circumstances exist justifying the authorization of emergency use of drugs and biological products during the COVID-19 pandemic." Emergency Use Authorization Declaration, 85 Fed. Reg. 18,250, 18,250–51 (Apr. 1, 2020). Based on that determination, FDA issued EUAs in December 2020 for the Pfizer-BioNTech and Moderna COVID-19 vaccines. *See* Aug. 23, 2021 Letter of Authorization from FDA to Pfizer Inc., https://perma.cc/25TT-F4V6 ("Pfizer EUA Letter") (revising and reissuing the December 2020 EUA); Aug. 12, 2021 Letter of Authorization from FDA to ModernaTX, Inc., https://perma.cc/T7WX-QEYU ("Moderna EUA Letter") (same). In February 2021, FDA issued an EUA for the J&J COVID-19 vaccine. *See* June 10, 2021 Letter of Authorization from FDA to Janssen Biotech, Inc., https://perma.cc/WX3L-PYVE ("Janssen EUA Letter") (revising and reissuing the February 2021 EUA). All three EUAs are based on FDA's review of extensive safety and efficacy data, including from a Pfizer clinical trial with approximately 46,000 participants, a Moderna clinical trial with approximately 30,000 participants, and a Janssen/J&J clinical trial with approximately 43,000 participants. *See* Pfizer EUA Letter at 3; Moderna EUA Letter at 2; Janssen EUA Letter at 2.

On August 23, 2021, the Pfizer-BioNTech COVID-19 vaccine obtained FDA approval, under the name Comirnaty, for people aged 16 years and older. *See* Aug. 23, 2021 Letter Approving Biologics License Application from FDA to BioNTech Mfg., https://perma.cc/R3D3-M8V8. This means that the vaccine not only is available for emergency use, but also has completed "the agency's standard process for reviewing the quality, safety and effectiveness of medical products." FDA, News Release

5

– FDA Approves First COVID-19 Vaccine (Aug. 23, 2021), https://perma.cc/C4DD-PWE5.

In approving Comirnaty, FDA determined that the vaccine was 91.1% effective in preventing COVID-19 disease and between 95% and 100% effective in preventing severe COVID-19, based on an analysis of effectiveness data from approximately 20,000 vaccine and 20,000 placebo recipients. FDA, Comirnaty Approved Prescribing Information at 7, 15–18, https://perma.cc/P87N-YGX2. FDA concluded that the product is safe based on data from approximately 12,000 vaccine recipients who were followed for safety outcomes for at least six months after their second dose. *Id.* at 12.

Comirnaty is the same formulation as the EUA-authorized Pfizer-BioNTech vaccine, and the two vaccine products "can be used interchangeably . . . without presenting any safety or effectiveness concerns." Pfizer EUA Letter at 2 n.8. Therefore, providers may use doses of the Pfizer-BioNTech vaccine distributed under EUA as if they were doses of Comirnaty. *See* Comirnaty and Pfizer-BioNTech COVID-19 Vaccine Fact Sheet (revised Aug. 23, 2021), https://perma.cc/XCX5-54RC.

## III.    Executive Order No. 14043

On September 9, 2021, President Biden issued Executive Order No. 14043. *See* 86 Fed. Reg. at 50,989–50,990. The Executive Order reflects the President's determination that the ongoing COVID-19 emergency threatens "[t]he health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact, [which] are foundational to the efficiency of the civil service." *Id.* "[I]n light of public health guidance"—particularly CDC's determination "that the best way to slow the spread of COVID-19 and to prevent infection by the Delta variant or other variants is to be vaccinated"—the Executive Order provides that COVID-19 vaccination will be required for all federal employees, "subject to such exceptions as required by law." *Id.* Accordingly, the Executive Order instructs each federal agency to "implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its federal employees, with exceptions only as required by law." *Id.* at 50,990. It also directs the Task Force to "issue guidance

6

. . . on agency implementation of this requirement." *Id.*

On September 13, 2021, the Task Force updated its model safety principles to indicate that federal employees who do not receive an exception should be fully vaccinated "no later than November 22, 2021." Task Force, COVID-19 Workplace Safety: Agency Model Safety Principles at 1 (updated Sept. 13, 2021), https://perma.cc/7NZX-KUE6. To meet this deadline, federal employees receiving the Moderna vaccine should get their first dose no later than October 11, 2021; federal employees receiving the Pfizer-BioNTech vaccine should get their first dose no later than October 18, 2021; and federal employees receiving the single-dose J&J vaccine should do so no later than November 8, 2021. *See* Task Force, FAQs, Vaccinations, Vaccination Requirement for Federal Employees (last visited Oct. 5, 2021), https://perma.cc/7WXN-FQBK.

On October 4, 2021, the Task Force issued additional guidance recommending that each agency establish a date by which its employees should provide notice that they are seeking a legally required exception. *See* Exception FAQs. The Task Force provided template forms for seeking an exception based on a medical condition or a religious objection. *See* Template: Request for a Medical Exception to the COVID-19 Vaccination Requirement (last visited Oct. 5, 2021), https://perma.cc/95US-4Q99 ("Medical Exception Template") (explaining that "requests for 'medical accommodation' or 'medical exceptions' will be treated as requests for a disability accommodation and evaluated and decided under applicable Rehabilitation Act standards"); Template: Request for a Religious Exception to the COVID-19 Vaccination Requirement (last visited Oct. 5, 2021), https://perma.cc/43FA-J49F ("Religious Exception Template"). Each agency is directed to "follow its ordinary process to review and consider what, if any, accommodation it must offer" under applicable federal law. *See* Task Force, FAQs, Vaccinations, Enforcement of Vaccination Requirement for Federal Employees, (last visited Oct. 5, 2021), https://perma.cc/7WXN-FQBK ("Enforcement FAQs").

Per Task Force guidance, an employee who fails to provide proof of vaccination or request an exception by November 8, 2021, may be subject to discipline, but an employee who requests an exception will not be subject to discipline while the request is under consideration. *Id.* If an exception request is denied, the employee will be given two weeks from the denial within which to receive the first (or only) dose of a COVID-19 vaccine before being subject to discipline. *See* Exception FAQs.

If employees fail to timely comply with the vaccination requirement (and do not have pending exception requests), the Task Force recommends "initiat[ing] an enforcement process" that involves "work[ing] with [these] employees to encourage their compliance." Enforcement FAQs. The Task Force recommends that this begin with a five-day period of education and counseling, to include providing the employee with information from CDC regarding the benefits of vaccination and ways to obtain the vaccine. *See id.* If the employee does not demonstrate progress toward becoming fully vaccinated, the agency may suspend the employee for up to fourteen days, after which continued noncompliance may result in additional discipline, up to and including removal from federal service. *See id.* However, "[i]f an employee responds at any phase of the discipline by submitting proof of progress toward full vaccination (*i.e.*, completion of a required vaccination dose), the agency should hold the discipline in abeyance to afford the employee a reasonable period of time to become fully vaccinated." *Id.*

## IV.    This Lawsuit

On September 29, 2021, Plaintiff filed this lawsuit against President Biden. *See* Compl., ECF No. 1. Count One alleges compelled speech in violation of the First Amendment; Count Two alleges violations of the Administrative Procedure Act ("APA") and procedural due process; and Count Three invokes substantive due process and equal protection. *See id.* ¶¶ 94–131. Shortly after filing the Complaint, Plaintiff moved to preliminarily enjoin enforcement of the Executive Order. *See* Pl.'s Mot. for Prelim. Inj., ECF No. 4. Defendant opposes Plaintiff's motion for the reasons set forth below.

8

**ARGUMENT**

### I.    The Court Lacks Jurisdiction.

At the outset, the Court lacks jurisdiction over Plaintiff's claims for three reasons. *First*, under well-established precedent, courts lack jurisdiction to enter declaratory or injunctive relief against the President in his official capacity. *Second*, Plaintiff's claims, all of which concern the terms of his federal employment, are precluded by the Civil Service Reform Act—as this Court held in very similar circumstances in *Crane*. *See* 2013 WL 8211660. *Third*, this case is unripe because the challenged order recognizes that employees will be able to seek exceptions, and Plaintiff has neither sought nor been denied an exception, nor has he been subjected to any discipline. The Court should therefore both deny the motion for a preliminary injunction and dismiss the case.

### A.    The Court Lacks Jurisdiction to Enter Declaratory or Injunctive Relief Against the President.

Whatever claims Plaintiff might have sought to pursue against NLRB, neither injunctive nor declaratory relief is proper against the President in his official capacity. Rather, "[w]ith regard to the President, courts do not have jurisdiction to enjoin him and have never submitted the President to declaratory relief." *Newdow v. Roberts*, 603 F.3d 1002, 1013 (D.C. Cir. 2010) (citations omitted); *see Franklin v. Massachusetts*, 505 U.S. 788, 802–03 (1992) ("'[I]n general 'this court has no jurisdiction of a bill to enjoin the President in the performance of his official duties.'" (quoting *Mississippi v. Johnson*, 71 U.S. (4 Wall.) 475, 501 (1866)); *Swan v. Clinton*, 100 F.3d 973, 976 n.1, 978 (D.C. Cir. 1996) (courts lack the authority to enjoin the President in the performance of his official duties and "similar considerations" restrict a court's power to issue a declaratory judgment against the President); *Newdow v. Bush*, 355 F. Supp. 2d 265, 280 (D.D.C. 2005) (similar). As Justice Scalia explained in *Franklin*, an "apparently unbroken historical tradition supports the view, . . . implicit in the separation of powers established by the Constitution, that the principals in whom the executive and legislative powers are ultimately vested . . . may not be ordered to perform particular executive or legislative acts at the behest

of the Judiciary." 505 U.S. at 827 (Scalia, J., concurring in part). "For similar reasons," courts "cannot issue a declaratory judgment against the President." *Id.*

The reasons for this rule are "painfully obvious." *Swan*, 100 F.3d at 978. The President and the judiciary are co-equal branches of government, and the latter ordering the former to perform specific executive acts "at best creates an unseemly appearance of constitutional tension and at worst risks a violation of the constitutional separation of powers." *Id.*; *accord Kendall v. U.S. ex rel. Stokes*, 37 U.S. (12 Pet.) 524, 610 (1838) ("The executive power is vested in a President; and as far as his powers are derived from the constitution, he is beyond the reach of any other department, except in the mode prescribed by the constitution through the impeaching power."). The *Mississippi* Court further warned of its lack of "power to enforce its process" in support of any injunction against the President. 71 U.S. at 501. For those reasons, the Court concluded that an "attempt on the part of the judicial department . . . to enforce the performance of [executive and political] duties by the President [is] . . . 'an absurd and excessive extravagance.'" *Id.* at 499 (quoting Chief Justice Marshall)).[2]

Even if the Constitution permitted Plaintiff to seek declaratory or injunctive relief against the President, Plaintiff would still need to identify a relevant waiver of sovereign immunity. Plaintiff invokes the APA, which waives immunity for suits against federal agencies seeking nonmonetary relief, *see* 5 U.S.C. § 702, but "the President's actions [are] not reviewable under the APA, because the President is not an 'agency' within the meaning of the APA," *Dalton v. Specter*, 511 U.S. 462, 469 (1994)

---

[2] *Franklin* "left open the question whether the President might be subject to a judicial injunction requiring the performance of a purely 'ministerial' duty." *Swan*, 100 F.3d at 977. "A ministerial duty is one that admits of no discretion, so that the official in question has no authority to determine whether to perform the duty." *Id.* (citing *Mississippi*, 71 U.S. (4 Wall) at 498). Plaintiff identifies no ministerial duty with which the President has failed to comply. And in any event, courts routinely decline to compel the President to perform ministerial duties due to the separation-of-powers problems raised by such relief. *See, e.g.*, *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587, 616 (D.C. Cir. 1974); *Nat'l Wildlife Fed'n v. United States*, 626 F.2d 917, 926 (D.C. Cir. 1980).

(citing *Franklin*, 505 U.S. at 801).  Plaintiff identifies no other waiver that might apply here, and the case should thus be dismissed.  *See Alexander v. Trump*, 753 F. App'x 201, 206 (5th Cir. 2018) (dismissing claims against President; "§ 702's waiver does not apply to . . . . claims against President" and Plaintiff had not "identified any other waiver of sovereign immunity").[3]

## B.       Plaintiffs' Claims Are Precluded By the Civil Service Reform Act.

As this Court explained in *Crane*, "Congress enacted the CSRA as 'a comprehensive system for reviewing personnel action taken against federal employees.'"  2013 WL 8211660, at *2 (quoting *United States v. Fausto*, 484 U.S. 439, 455 (1988)).  "The CSRA's remedies are 'the comprehensive and exclusive procedures for settling work-related controversies between federal civil-service employees and the federal government.'"  *Id.* (quoting *Rollins v. Marsh*, 937 F.2d 134, 139 (5th Cir. 1991)).[4]  "Thus, when a particular employee's class or asserted claim has been excluded from the CSRA's framework for administrative and judicial review of adverse personnel actions, that excluded employee cannot seek redress in a federal district court."  *Id.*  "Furthermore, the CSRA precludes district-court adjudication of a covered employee's challenge to a covered adverse employment action, even when the employee raises constitutional challenges to federal statutes and seeks equitable relief."[5]  *Id.*  (citing

---

[3] The Declaratory Judgment Act similarly does not waive the government's sovereign immunity. *See, e.g.*, *Crane v. Napolitano*, No. 3:12-CV-3247-O, 2013 WL 1744422, at *13 (N.D. Tex. Apr. 23, 2013) (O'Connor, J.); *Austral Oil Co. v. Nat'l Park Serv.*, 982 F. Supp. 1238, 1242 (N.D. Tex. 1997).

[4] Only claims of discrimination, which Plaintiff does not assert in this action, may be brought in district court through separate antidiscrimination statutes as specifically provided for by the CSRA, 5 U.S.C. §§ 2302(d), 7702, 7703(b)(2).

[5] A different question might be presented if Plaintiff "had brought his constitutional claim to the [Office of Special Counsel] and been denied an opportunity to pursue that claim in the Federal Circuit." *Fleming v. Spencer*, 718 F. App'x 185, 188 n.2 (4th Cir. 2018); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 9–10 (2012).  The Fifth Circuit's unpublished decision in *Gonzalez v. Manjarrez*, 558 F. App'x 350 (5th Cir. 2014), could be read to suggest that even in those circumstances, Plaintiff's claims would be precluded. *See id.* at 354 ("The [*Elgin*] Court knew that some of these employees . . . were denied any judicial review under the CSRA, yet it still declared that this scheme was 'exclusive' with regard to constitutional claims." (footnote omitted)).  The Court need not decide that question here because Plaintiff has not attempted to exhaust his constitutional claims under the CSRA, and the "CSRA plainly precludes extrastatutory judicial review of constitutional claims that are asserted before

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012); *see also, e.g.*, *Broadway v. Block*, 694 F.2d 979, 986 (5th Cir. 1982) (CSRA's comprehensive scheme cannot be circumvented by suing under the APA). Where CSRA preclusion applies, a district court lacks jurisdiction. *Crane*, 2013 WL 8211660, at *3.

Under the CSRA, different administrative and judicial review procedures apply depending on the nature of the challenged employment action and the types of claims asserted. More serious "adverse actions"—removal, suspension for more than 14 days, reduction in grade, reduction in pay, or furlough of 30 days or less, 5 U.S.C. § 7512—may be appealed directly to the Merit Systems Protection Board ("MSPB"), with judicial review of the Board's decision in the Federal Circuit. *Id.* §§ 7513(d), 7703(b)(1). Corrective action for a less-severe prohibited personnel practice, *id.* § 2302(b), must generally be sought first before the Office of Special Counsel ("OSC"), *id.* § 1214(a)(3).[6] If the employee is dissatisfied with the OSC's determination, the employee may seek corrective action from the MSPB in certain instances, followed by judicial review in the appropriate court of appeals. *Id.* §§ 1214(a)(3), (c); 7703(b)(1).

As in *Crane*, "Plaintiff['s] injury is based on" potential "adverse employment action," where the government has allegedly "threatened to take disciplinary action against . . . plaintiff[] if [he] fail[s] to comply." 2013 WL 8211660, at *3. Thus, just as in *Crane*, the Court need not "determine whether Plaintiff[] [has] an available remedy under the CSRA." 2013 WL 8211660, at *3 n.2. "If the CSRA

---

an employee has exhausted his remedies available under the statute." *Fleming*, 718 F. App'x at 188; *see also, e.g., Irizarry v. United States*, 427 F.3d 76, 79 (1st Cir. 2005); *Steadman v. Governor, U.S. Soldiers' & Airmen's Home*, 918 F.2d 963, 967 (D.C. Cir. 1990).

[6] Congress authorized OSC to investigate whether a challenged personnel action constitutes one or more thirteen specified "prohibited personnel practices." 5 U.S.C. §§ 1212(a)(2), 1214(a)(1)(A), 2302(b)(1)–(13); *see also* 5 U.S.C. 1212(a)(1). Congress defined "prohibited personnel practices" to include personnel actions that "violate[] any law, rule, or regulation implementing, or directly concerning, the merit system principles contained in section 2301 of this title." *Id.* § 2302(b)(12). One such principle provides that "[a]ll employees . . . should receive fair and equitable treatment . . . with proper regard for their . . . constitutional rights." 5 U.S.C. § 2301(b)(2). OSC thus has jurisdiction to investigate an employee's claim that a personnel action violated the Constitution. *See Tubesing v. United States*, 810 F.3d 330, 333 (5th Cir. 2016).

provides a remedy for Plaintiffs' challenged disciplinary action, then the CSRA's remedy is Plaintiffs' exclusive avenue for redressing their claims." *Id.* Conversely, "[i]f the CSRA does not provide a remedy for Plaintiffs' challenged disciplinary action (for example, because the disciplinary action is too minor), then a federal district court cannot provide relief because it would be affording a greater remedy than that provided by the CSRA." *Id.*; *see also, e.g.*, *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (CSRA shows "Congress's intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review."). "Under either scenario, this Court does not have subject-matter jurisdiction over Plaintiffs' federal employment disputes." *Crane*, 2013 WL 8211660, at *3 n.2.

## C. Plaintiff's Claims Are Unripe Because He Has Neither Been Denied an Exception Nor Been Subjected to Discipline.

Even if this action were not precluded by the CSRA, Plaintiff's claims would remain speculative and unripe. As Plaintiff accurately alleges, the Executive Order incorporates exceptions required by law, Compl. ¶ 74, and the Task Force has released guidance making clear that employees may be entitled to an exception if they fail to become vaccinated because of a disability or a sincerely held religious belief, *id.* ¶ 78.

Although Plaintiff indicates that he "does not wish to disclose to his employer personal and private information about" his religious beliefs, Compl. ¶ 90,[7] the Complaint suggests that he would like to apply for a religious exception. *See id.* ¶ 91. (Indeed, if Plaintiff did not plan to seek an exception, he would lack standing to bring Count Two, which complains about an alleged lack of guidance explaining how to seek such an exception.) Yet at this stage, Plaintiff has not made such a request, nor has such a request been denied. As explained below, *see infra* Part II.B.2, there is ample

---

[7] Plaintiff's preferences aside, employers are only obligated to accommodate needs of which they are notified. *See* 29 C.F.R. § 1605.2(c)(1) ("After an employee or prospective employee notifies the employer or labor organization of his or her need for a religious accommodation, the employer or labor organization has an obligation to reasonably accommodate the individual's religious practices."); 29 C.F.R. § 1614.203(d)(3)(i)(D) (under Rehabilitation Act, "individual may request a reasonable accommodation orally or in writing").

13

guidance available to a federal employee who seeks a reasonable accommodation, both in general and as to COVID-19 vaccination specifically. Should Plaintiff make an accommodation request, his obligation to become vaccinated will be deferred pending the agency's final determination. *See supra* Background Part III.

It follows that Plaintiff's claims are unripe. Ripeness is a component of subject-matter jurisdiction, and so a court cannot decide claims that are not yet ripe. *See Sample v. Morrison,* 406 F.3d 310, 312 (5th Cir. 2005). "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for judicial review." *United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000). "Courts customarily deal in specific facts or circumstances drawn with some precision and legal questions trimmed to fit those facts or circumstances; they are not in the business of deciding the general without reference to the specific." *Am. Fed'n of Gov't Emps. v. O'Connor*, 747 F.2d 748, 755–756 (D.C. Cir. 1984). Here, Plaintiff's injury is "speculative and may never occur" because, if he requests an accommodation, it might be granted. Even if such a request were denied, it is impossible to know with certainty what discipline, if any, NLRB would impose. Indeed, this "court has no right to speculate that the administrative bodies will make erroneous decisions which must be reversed by a court decision." *Garcia*, 680 F.2d at 31; *cf. Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 199 (5th Cir. 2000) (reasonable accommodation claim under Fair Housing Act ripe "when the disabled resident is first denied a reasonable accommodation"). Thus, even putting aside the fact that this action is precluded under the CSRA, Plaintiff has no justification for rushing to federal court now.

## II.    Plaintiff Is Not Entitled to Extraordinary Injunctive Relief.

Even if the Court had jurisdiction, Plaintiff would still not be entitled to injunctive relief. "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 24 (2008). "The Fifth Circuit frequently cautions that . . . 'the decision to grant a

14

preliminary injunction is to be treated as the exception rather than the rule.'" *Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*, No. 08-547, 2009 WL 175132, at *6 (E.D. Tex. Jan. 23, 2009) (alteration omitted) (quoting *House the Homeless, Inc. v. Widnall*, 94 F.3d 176, 180 (5th Cir. 1996)).  The party seeking such relief bears the burden to show: (1) "a substantial threat of irreparable injury," (2) "a substantial likelihood of success on the merits," (3) "that the threatened injury if the injunction is denied outweighs any harm that will result if the injunction is granted," and (4) "that the grant of an injunction will not disserve the public interest." *Jordan v. Fisher*, 823 F.3d 805, 809 (5th Cir. 2016).  A preliminary injunction should not be "granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Jordan v. Fisher*, 813 F.3d 216, 221 (5th Cir. 2016) (citation omitted).

### A.      Plaintiff Does Not Face an Imminent Threat of Irreparable Harm.

"Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered."  11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013).  Plaintiff bears a "heavy burden of clearly establishing to the Court irreparable harm." *Watchguard Techs., Inc. v. Valentine*, 433 F. Supp. 2d 792, 794 (N.D. Tex. 2006).  To meet this burden, he must demonstrate "a *significant threat* of injury from the impending action, that the injury is *imminent*, and that money damages would not fully repair the harm." *Humana, Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986) (emphases added).  Here, Plaintiff contends that he faces a "Hobson's choice" of either becoming vaccinated or "fac[ing] discharge for refusing to do so," Compl. ¶ 33, and that either choice will result in irreparable harm, *see id.* ¶¶ 34–41.  This contention fails for two reasons.

*First,* any purported "Hobson's choice" is not imminent because Plaintiff has the option of requesting a religious or medical exception.  *See supra* Part I.C.  And Plaintiff's suggestion that the mere

15

act of requesting an exception would cause him irreparable harm, Compl. ¶ 42, finds no support in law or in logic.  Notably, the information required to be included with an exception request is not nearly as extensive as Plaintiff imagines.  *Compare id.* ¶ 42, *with* Religious Exception Template, *and* Medical Exception Template.  While he states that he "does not wish" to disclose *any* information about his "religious beliefs" or "medical history," Compl. ¶ 90, he fails to explain how he would be harmed by providing limited information in a confidential manner, *see* 5 U.S.C. § 552a (setting forth various protections for private information shared with the government).  To the contrary, it is routine for federal employees seeking reasonable accommodations to inform their agency employer of the basis for such requests, *see supra* note 7, and Plaintiff cites no case law suggesting that doing so might constitute irreparable harm.

*Second*, the most severe penalty Plaintiff could face is removal.  *See* Enforcement FAQs; *accord* Compl. ¶ 39.  If that were to happen, Plaintiff could contest his removal before the MSPB and, if successful, be reinstated with back pay.  Plaintiff asserts that he would be irreparably harmed by temporary job loss, *see id.* ¶¶ 39–41, but this assertion is foreclosed by numerous Fifth Circuit cases holding that a federal employee's discharge does not constitute irreparable harm.  *See White v. Carlucci*, 862 F.2d 1209, 1212 (5th Cir. 1989) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)); *Garcia*, 680 F.2d 29; *Morgan v. Fletcher*, 518 F.2d 236, 239–40 (5th Cir. 1975).  Indeed, "[i]t is practically universal jurisprudence in labor relations in this country that there is an adequate remedy for individual wrongful discharge after the fact of discharge," *i.e.*, "reinstatement and back pay."  *Garcia*, 680 F.2d at 31 (citing 29 U.S.C. § 160(c); 48 Am. Jur. 2d §§ 1889, 1971); *see also Jwalapuram v. Mayorkas*, No. 3:21-CV-699-M, 2021 WL 2695369, at *2 (N.D. Tex. Mar. 31, 2021) (similar).

In the alternative, Plaintiff claims that he will suffer irreparable harm because, as a mid-level supervisor of roughly 25 employees, he will "inevitably" be tasked with encouraging his subordinates to become vaccinated and with disciplining those who refuse.  Compl. ¶ 44.  This unsubstantiated

16

prediction about how NLRB will implement and enforce the Executive Order is too speculative to support issuance of a preliminary injunction. *See EHO360, LLC v. Opalich*, No. 3:21-CV-724-B, 2021 WL 3054867, at *5 (N.D. Tex. July 20, 2021). In any event, as explained more fully below, the legal claim underlying this theory of irreparable harm is meritless. *See infra* Part II.B.1.

Plaintiff also contends that he will "suffer harm from a Federal workforce that has been systematically stripped of employees who dissent" from the vaccination requirement, Compl. ¶ 45, on the ground that if he ends up being terminated and contests that decision before the MSPB or EEOC, these entities "will have been cleansed of like-minded or otherwise free-thinking advocates who oppose" the vaccination requirement, *id.* ¶ 47. This unsupported, speculative assertion ignores the availability of religious and medical exceptions and is a far cry from the showing of imminent harm that the Fifth Circuit requires. *See Garcia*, 680 F.2d at 31 ("It is entirely speculative to assume that the administrative agencies will deny [a discharged civil servant] any relief to which he may be entitled.").

### B.     Plaintiff Is Not Likely to Succeed on the Merits.

Plaintiff cannot demonstrate the second requirement for preliminary injunctive relief: a substantial likelihood of success on the merits.

#### 1.     Count One: The Executive Order Does Not Violate the First Amendment.

Count One asserts that Plaintiff has a First Amendment right to refrain from supporting the government's efforts to carry out a vaccination requirement with which he disagrees. *See* Compl. ¶¶ 91–92, 95–97. Plaintiff alleges that he supervises "roughly 25 employees" and that "he will inevitably be tasked with encouraging/compelling subordinates to undergo injections, and . . . with facilitating the discipline and discharge of those who refuse." *Id.* ¶ 44; *see also id.* ¶¶ 88–89. Plaintiff therefore asserts that "the Order compels speech in violation of the First Amendment." *Id.* ¶ 29.

This claim fails for two independent reasons. *First*, nothing in the Executive Order compels Plaintiff to speak in favor of, or work to enforce, the vaccination requirement. The Executive Order

17

simply announces the vaccination requirement and instructs each agency to implement a vaccination program "to the extent consistent with applicable Federal law." *See* 86 Fed. Reg. at 50,989–50,990. Plaintiff's claim does not concern the Executive Order itself but rather the manner in which he expects NLRB—which is not a named defendant—to implement it. Thus, even if Plaintiff's legal theory were viable, it would not show the Executive Order to be unlawful.

*Second*, it is black-letter law that "[j]ob-required speech is not protected" by the First Amendment. *Williams v. Dall. Indep. Sch. Dist.,* 480 F.3d 689, 693 (5th Cir. 2007) (per curiam); *see also, e.g., Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) ("[S]peech required by one's position as an employee is not protected by the First Amendment."); *Nixon v. City of Houston*, 511 F.3d 494, 498 (5th Cir. 2007) (same). While "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern," it does not protect "speech that owes its existence to a public employee's professional responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 421 (2006). As the Supreme Court has explained, this rule "afford[s] government employers sufficient discretion to manage their operations" by allowing supervisors to "ensure that their employees' official communications . . . promote the employer's mission." *Id.* at 422–23. Here, Plaintiff admits that any hypothetical speech in furtherance of the vaccination requirement that might be required of him would occur only as part of his official duties. *See* Compl. ¶¶ 87–88. His First Amendment claim is therefore meritless.

### 2. Count Two: The Executive Order Violates Neither Procedural Due Process Nor the Administrative Procedure Act.

In Count Two, Plaintiff contends that the President, in violation of the APA and procedural due process, has "failed to provide information about whether there are any other exemptions 'by law' besides the Safer Federal Workforce Task Force prescribed religious and disability exceptions," Compl. ¶ 105, and has "not provided guidance as to how Plaintiff can submit (should he so choose) an application for an exception or what the submission process will entail," *id.* ¶ 106.

18

This claim fails.  *First*, insofar as this claim arises under the APA, the President is not amenable to suit.  *See supra* Part I.A.  *Second*, Plaintiff already has significant information about how to request reasonable accommodations—both generally and as to COVID-19 vaccination specifically.  At the time that Plaintiff filed suit, he could have consulted NLRB's manual governing its program for accommodations under the Rehabilitation Act, as well as an agency intranet page providing additional information.  *See generally* Declaration of Lawrence W. Patterson ¶¶ 2–4 (App. 1–2) (attaching such information).  He could have also consulted Equal Employment Opportunity Commission ("EEOC") guidance describing employees' rights to certain religious accommodations.  *See, e.g.*, EEOC, What You Should Know: Workplace Religious Accommodation (Mar. 6, 2014), https://perma.cc/QND4-8B6G; *see also* 29 C.F.R. Part 1605.  In addition, as to COVID-19 specifically, the Task Force yesterday released template forms for requesting accommodations and directed each agency to "follow its ordinary process to review and consider what, if any, accommodation it must offer" under applicable federal law.  *See supra* Background Part III.  Some NLRB employees have already requested exceptions from COVID-19 vaccination, *see* Patterson Decl. ¶ 5 (App. 2), and Plaintiff identifies no reason why he is not similarly able to seek any exception for which he qualifies.

### 3. Count Three:  The Executive Order Does Not Violate Substantive Due Process or Equal Protection.

Count Three principally asserts that the Executive Order violates substantive due process. Plaintiff contends that the Executive Order burdens a fundamental right—the "right to refuse medical care"—and is therefore subject to "strict scrutiny."  Compl. ¶¶ 113–14, 119.  Plaintiff further contends that the Executive Order is so unreasonable that it cannot satisfy any standard of judicial review.  *See id.* ¶¶ 121–28.  Neither contention succeeds.  As numerous courts have held, vaccination requirements are subject to rational basis review, under which the Executive Order easily passes muster.

A plaintiff invoking substantive due process must (1) provide "a careful description" of the right being asserted; and (2) demonstrate that the right is "fundamental," *i.e.*, "deeply rooted in this

19

Nation's history and tradition and implicit in the concept of ordered liberty." *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (internal quotations omitted).  If the challenged law infringes upon a fundamental right, it receives heightened judicial scrutiny; if not, it receives rational basis review.  *See, e.g.*, *Cantu-Delgadillo v. Holder*, 584 F.3d 682, 687 (5th Cir. 2009).

Plaintiff errs in suggesting that the Executive Order implicates the "right to refuse medical care."  *See* Compl. ¶¶ 113–14.  Plaintiff relies on *Cruzan ex rel. Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261 (1990), which involved "the forcible administration of life-sustaining medical treatment" to a person in "a persistent vegetative state," *id.* at 266, 279, and *Washington v. Harper*, 494 U.S. 210 (1990), which involved "the forced administration of antipsychotic drugs" to "an inmate suffering from a serious mental disorder," *id.* at 236.  These cases are inapposite because the Executive Order does not force Plaintiff to receive medical care; instead, it gives him a choice between becoming vaccinated, requesting an exception, or facing disciplinary action.  *See, e.g.*, *Klaassen v. Trs. of Ind. Univ.*, --- F. Supp. 3d ----, 2021 WL 3073926, at *25 (N.D. Ind. July 18, 2021) (public university's COVID-19 vaccination requirement was "a far cry" from forcible provision of medical care), *aff'd*, 7 F.4th 592 (7th Cir. 2021), *emergency application for relief denied*, No. 21A15 (Barrett, J., in chambers) (Aug. 12, 2021); *Bridges v. Houston Methodist Hosp.*, No. 21-1774, 2021 WL 2399994, at *2 (S.D. Tex. June 12, 2021) (similar).

It is well established that vaccination requirements such as the one at issue here do not burden any "fundamental right ingrained in the American legal tradition." *Klaassen*, 7 F.4th at 593; *accord, e.g.*, *Doe v. Zucker*, 520 F. Supp. 3d 217, 249–53 (N.D.N.Y. 2021).  Historically, "vaccination requirements, like other public-health measures, have been common in this nation." *Klaassen*, 7 F.4th at 593.  And more than a century ago, the Supreme Court held "that a state may require all members of the public to be vaccinated against smallpox," under penalty of criminal sanctions.  *Id.* (citing *Jacobson v. Massachusetts*, 197 U.S. 11 (1905)); *see also Prince v. Massachusetts*, 321 U.S. 158, 166–67 (1944) (Constitution does not provide "freedom from compulsory vaccination"); *Zucht v. King,* 260 U.S. 174,

20

177 (1922) (similar).  Accordingly, courts have "consistent[ly] use[d] . . . rational basis review to assess mandatory vaccination measures." *Klaassen*, 2021 WL 3073926, at \*24; *accord, e.g.*, *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 355–56 (4th Cir. 2011); *Norris v. Stanley*, --- F. Supp. 3d. ---, No. 21-756, 2021 WL 3891615, at \*1–\*2 (W.D. Mich. Aug. 31, 2021); *Harris v. Univ. of Mass., Lowell*, No. 21-11244, 2021 WL 3848012, at \*6 (D. Mass. Aug. 27, 2021); *Zucker*, 520 F. Supp. 3d at 249–53; *see also Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) (explaining that *Jacobson* "essentially applied rational basis review" to a State's vaccination requirement).

There is no merit to Plaintiff's contention that this body of "traditional vaccine caselaw" does not apply here.  *See* Compl. ¶ 118.  Plaintiff inaccurately asserts that mRNA vaccines "have much more in common" with "gene therapy"[8] than with "conventional vaccines."  *Id.* ¶ 7; *see also id.* ¶¶ 11, 51–53, 115–17.  In reality, as explained above, the Pfizer-BioNTech and Moderna vaccines do not interact with—much less modify—the recipient's genetic material.  In any event, the Executive Order does not require Plaintiff to receive an "mRNA injection" because the J&J vaccine—which Plaintiff entirely fails to mention—does not use mRNA technology.  Nor are COVID-19 vaccines so "novel" as to warrant a departure from cases involving "established therapies," *id.* ¶ 118.  Each vaccine has undergone extensive testing and been authorized for emergency use by FDA, and the Pfizer-BioNTech vaccine has also received FDA approval.  *See supra* Background Part II.  Moreover, numerous courts have held that traditional case law (involving rational basis review) applies to COVID-19 vaccination requirements.  *See, e.g.*, *Klaassen*, 2021 WL 3073926, at \*24–\*25; *Norris*, 2021 WL 3891615, at \*1–\*2; *Harris*, 2021 WL 3848012 at \*3, \*6; *see also Maniscalco v. N.Y. City Dep't of Educ.*,

---

[8] "Gene therapy is a technique that modifies a person's genes to treat or cure disease," *e.g.*, by "[r]eplacing a disease-causing gene with a healthy copy of the gene"; "[i]nactivating a disease-causing gene"; or "[i]ntroducing a new or modified gene into the body to help treat a disease."  FDA, What Is Gene Therapy? (updated July 25, 2018), https://perma.cc/3ADC-VPYE.

No. 21A50 (Oct. 1, 2021) (Sotomayor, J., in chambers) (denying application to enjoin New York City's vaccination requirement for public school employees).

"Under rational basis review, courts must presume that the [measure] in question is valid and sustain it so long as [it] is rationally related to a legitimate state interest." *Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 748 F.3d 583, 594 (5th Cir. 2014). The challenged measure "is presumed constitutional," and "[t]he burden is on the one attacking the [measure] to negative every conceivable basis which might support it." *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993) (quotation omitted). Here, there should be no serious dispute that the Executive Order is rationally related to the government's strong interest in promoting "the health and safety of the Federal workforce, and the health and safety of members of the public with whom they interact" during the COVID-19 pandemic. 86 Fed. Reg. at 50,989; *see, e.g.*, *Klaassen*, 2021 WL 3073926, at *26 (holding that a public university's COVID-19 vaccination requirement furthered its "legitimate interest in promoting the health of its campus communities"). Plaintiff cites no case holding that a vaccination requirement lacked a rational basis, and Defendant is aware of none.

Count Three also asserts that the Executive Order is "insufficiently tailored to meet its stated objectives." Compl. ¶ 125; *see id.* ¶ 120–24 (asserting that it would be unreasonable to apply the policy in certain hypothetical situations, *e.g.*, to "[a]n employee who has recently defeated a COVID-19 infection and who now possesses high levels of protective antibodies"). At the outset, Plaintiff never alleges that any of these hypothetical situations apply to him. In any case, the allegations are irrelevant because "[t]here is no least restrictive means component to rational basis review." *Planned Parenthood*, 748 F.3d at 594. The Executive Order is rationally related to legitimate interests, so it must be upheld even if "there is an imperfect fit between means and ends." *Id.* (quoting *Heller*, 509 U.S. at 321); *see also, e.g.*, *Harris v. Hahn*, 827 F.3d 359, 365, 369 (5th Cir. 2016) (upholding state law under rational basis review despite evidence that it was "to some extent both underinclusive and overinclusive").

22

Count Three also briefly alleges an equal protection claim, suggesting that the Executive Order singles out "unvaccinated Americans," Compl. ¶ 129, and treats federal employees differently "than employees in the private sector," *id.* ¶ 130.  This claim fails because neither "unvaccinated Americans" nor "federal employees" constitutes a suspect or quasi-suspect classification that would trigger heightened scrutiny.  *See, e.g.*, *Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d 581, 588–59 & n.5 (5th Cir. 2016) (holding that rational basis review applies where there is no discrimination based on a suspect classification such as race or gender); *see also* 16B Corpus Juris Secundum, Constitutional Law §§ 1276, 1278 (describing suspect and quasi-suspect classifications).  It is plainly rational for the government to distinguish between the vaccinated and unvaccinated because the latter are significantly more likely to contract, spread, be hospitalized for, and die of COVID-19.  It is also obviously rational for the Executive Branch to treat federal employees differently than non-employees, as the former are on its payroll and carry out its functions.  *See* 5 U.S.C. § 7301 (authorizing the President to "prescribe regulations for the conduct of employees in the executive branch").

## C.    The Injunction Plaintiff Seeks Is Contrary to the Public Interest.

The third and fourth requirements for issuance of a preliminary injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009).  Plaintiff fails to address either issue, so there is no basis for finding that he "has clearly carried the burden of persuasion on all four requirements," as the Fifth Circuit demands. *See Jordan*, 813 F.3d at 221.  In any event, the equities and the public interest tilt decisively in Defendant's favor.

*First*, enjoining the Executive Order would harm the public interest in slowing the spread of COVID-19 among millions of federal employees and the members of the public with whom they interact.    As the Supreme Court has recognized, "stemming the spread of COVID-19 is unquestionably a compelling interest." *Cuomo*, 141 S. Ct. at 67.  Accordingly, numerous courts

23

reviewing "executive action designed to slow the spread of COVID-19" have concluded that, "[t]he public interest in protecting human life—particularly in the face of a global and unpredictable pandemic—would not be served by" an injunction. *Tigges v. Northam*, 473 F. Supp. 3d 559, 573-74 (E.D. Va. 2020); *see also, e.g.*, *Auracle Homes, LLC v. Lamont*, 478 F. Supp. 3d 199, 228 (D. Conn. 2020); *TJM 64, Inc. v. Harris*, 475 F. Supp. 3d 828, 840–41 (W.D. Tenn. 2020); *Talleywhacker, Inc. v. Cooper*, 465 F. Supp. 3d 523, 543 (E.D.N.C. 2020).

*Second*, a preliminary injunction would harm the public interest by hampering the efficiency of the federal civil service. The COVID-19 pandemic has interfered with numerous aspects of the government's work, *e.g.*, by forcing office closures; interfering with employees' access to paper-based records; limiting official travel; and causing staffing shortages. *See generally* Pandemic Response Accountability Committee, Top Challenges Facing Federal Agencies (June 2020), https://perma.cc/754N-56S9. Thus, enjoining the Executive Order would likely interfere with the government's ability to resume normal, pre-pandemic operations.

*Third*, a preliminary injunction would harm the government's interest in handling employment disputes through the administrative procedures established by Congress. As discussed more fully above, the CSRA creates comprehensive procedures for work-related controversies involving federal civil servants. *See supra* Part I.B. In *Garcia*, a federal employee "discharged for violation of work rules" sought to preliminarily enjoin his discharge without first exhausting his administrative remedies. 680 F.2d at 30–31. The Fifth Circuit found it "quite clear" that granting the requested injunction "would have a far more disruptive effect on the administrative processes established by the government to handle cases such as these than would, on balance, be the burden on the employee resulting from a refusal to grant the injunction." *Garcia*, 680 F.2d at 32. So too here.

By comparison, any harm that Plaintiff might experience absent a preliminary injunction is relatively minor. Plaintiff does not face an imminent prospect of workplace discipline, much less

removal.  He may avoid discipline entirely by receiving a COVID-19 vaccination on or before November 8, 2021.  He also has the option of requesting an exception to the vaccination requirement, which might be granted; and he will not face discipline as long as such a request is under consideration. And even if Plaintiff were ultimately removed from federal service for violating the vaccination requirement, he would have access to the same administrative remedies as the federal employee in *Garcia*.  Accordingly, granting the pending motion would harm the public interest far more than denying the motion would harm Plaintiff, and the motion should therefore be denied.

### III.     Any Relief Granted Should Be Narrowly Tailored.

If the Court were to disagree with Defendant's arguments, relief should be no broader than necessary.  "A plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 138 S. Ct. 1916, 1934 (2018), and "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 765 (1994).  Nationwide injunctions, in contrast, "take a toll on the federal court system—preventing legal questions from percolating through the federal courts, encouraging forum shopping, and making every case a national emergency for the courts and for the Executive Branch." *Trump. v. Hawaii*, 138 S. Ct. 2392, 2425 (2018) (Thomas, J., concurring); *see also, e.g.*, *Holland v. Nat'l Mining Ass'n*, 309 F.3d 808, 815 (D.C. Cir. 2002) ("Allowing one circuit's statutory interpretation to foreclose . . . review of the question in another circuit would squelch the circuit disagreements that can lead to Supreme Court review.").  Thus, should the Court determine that Plaintiff is entitled to any relief—and it should not—that relief should benefit only him.

### CONCLUSION

The Court lacks jurisdiction over this case, Plaintiff's claims are not likely to succeed on the merits, and the remaining factors likewise weigh against preliminary relief.  The Court should deny Plaintiff's motion and dismiss Plaintiff's Complaint.

Dated:  October 5, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

CHRISTOPHER HALL
CARLOTTA P. WELLS
Assistant Directors

/s/ *Steven A. Myers*

STEVEN A. MYERS
Senior Trial Counsel (NY Bar No. 4823043)
JOSEPH J. DEMOTT
R. CHARLIE MERRITT
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Tel:  (202) 305-8648
E-mail:  steven.a.myers@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 5, 2021, a copy of the foregoing was filed electronically via the Court's ECF system, which effects service upon counsel of record.

_/s/ Steven A. Myers_
Steven A. Myers