UNITED STATES DISTRICT COURT
for the

Northern District of Texas

Fort Worth Division

Case No.   4:21-cv-01098-O

|  |  |
|---|---|
| DAVID A. FOLEY | ) |
| *Plaintiff* | ) |
| **-v-** | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
|  | ) |
| JOSEPH R. BIDEN, JR. | ) |
| In his official capacity as President | ) |
| of the United States only | ) |
| *Defendant* | ) |
|  | ) |

**PLAINTIFF'S MOTION FOR AMENDMENT TO INCLUDE ADDITIONAL PARTIES, OR, IN THE ALTERNATIVE, LEAVE TO AMEND THE COMPLAINT TO INCLUDE ADDITIONAL DEFENDANTS**

**I.      Posture and Reason for the Motion**

Plaintiff respectfully moves this Honorable Court to amend the Complaint to include

additional party defendants, which is within this Honorable Court's discretion[1], or, in the

alternative, to provide Plaintiff leave to file an Amended Complaint.  Additionally, while

Plaintiff remains hopeful that this Motion will convince this Honorable Court to allow litigation

---

[1] See, e.g., *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977).

to proceed, Plaintiff respectfully requests leave in advance to more fully brief the Court on these issues by the October 13, 2021 deadline provided in this Court's October 6, 2021 Order should this Court deem further briefing necessary.

## II.    Procedural History

Plaintiff filed his Complaint and Motion for Preliminary Injunction on September 29, 2021. Plaintiff named President Joseph R. Biden, Jr. in his official capacity as President of the United States as the sole Defendant. This Honorable Court subsequently ordered Defendant to file a response, which he did on October 5. Therein, Defendant raised several defenses, including an argument that President Biden was not a proper party. Explicitly noting Defendant's argument suggesting that he is not an appropriate party to this action, this Honorable Court denied Plaintiff's Motion for Preliminary Injunction and ordered that Plaintiff show cause sufficient for this Honorable Court to permit further litigation.

## III.   The Law as to whether the POTUS can be a Proper Party Defendant for Injunctive Relief is not Settled

While there are examples[2] of District Courts issuing declaratory judgments against sitting presidents, and those judgments being affirmed by the Supreme Court of the United States[3], Plaintiff acknowledges that "there are uncertainties about the extent of [the judiciary's] power to enjoin [the President] … to act in a specific way."[4] In other words, the law is not settled on this issue. However, a Federal District Court "can fortunately sidestep this thicket, […] because,

---

[2] See, e.g., Citizens for Responsibility & Ethics in Wash. v. Trump, 302 F. Supp. 3d 127, 139 (D.D.C. 2018); National Treasury Employees Union v. Nixon, 492 F.2d 587 (D.C. Cir. 1974).

[3] See, e.g., Clinton v. City of New York, 524 U.S. 417 (1998) (affirming district court's issuance of a preliminary injunction on behalf of various organizations against President Clinton's unconstitutional use of the Line Item Veto Act).

[4] See, e.g., Nat'l Ass'n of the Deaf v. Trump, 486 F. Supp. 3d 45, 60 (D.D.C. 2020).

either as a matter of mootness or comity, enjoining other parties can provide Plaintiffs with the relief it believes warranted."[5]

In *Swan v. Clinton*[6], cited by Defendant, the court sidestepped the question of whether the President could be enjoined and instead, drawing upon the *All Writs Act*, enjoined federal officials (previously unnamed as defendants) who "could on balance substantially redress Swan's injury."[7]  As noted in that case, the Supreme Court has held that a court has power under the *All Writs Act* to issue commands that apply to "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice."[8]

Although Plaintiff does not concede that enjoining President Biden's Executive Order is beyond the reach of this Court, Plaintiff recognizes the prudence of "sidestepping the thicket" and requests leave to file an amended complaint to include additional defendants if deemed necessary by this Honorable Court.

IV.    **Proposed Defendants 2 and 3: The Chairman and Chairwoman of the National Labor Relations Board**

Plaintiff respectfully proposes that officials at the National Labor Relations Board (NLRB) – an "independent agency" that is subject to the Executive Order at issue in this case – be added as party defendants. The NLRB is Plaintiff's direct employer. Agency leadership consists of six presidential appointees – five Board Members (including its leader, Chairman Lauren McFerran) and the General Counsel (Jennifer Abruzzo). Day-to-day management of the Agency is divided by law, delegation, and Agency practice between the Chairman, the Board,

---

[5] Id.
[6] 100 F.3d 973 (D.C. Cir. 1996)
[7] 100 F.3d at 980 (granting summary judgment to plaintiff).
[8] *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977)

and the GC. [9] The Agency's offices include its headquarters in Washington, D.C.[10], a network of Field offices throughout the U.S., and two satellite Judges' offices in New York City and San Francisco. The NLRA assigns separate and independent responsibilities to the Board and the GC. As the leaders of the Agency that employs Plaintiff, and who will be the agents of the Defendant in carrying out Executive Order 14043, Chairman McFerran and GC Abruzzo are proper parties to this litigation.

No harm is caused by adding these NLRB officials as party defendants. Plaintiff notified the NLRB about his Complaint on September 30, 2021. Indeed, seemingly anticipating the NLRB's potential involvement in this litigation, counsel for Defendant has already obtained an affidavit from NLRB staff as part of his defense.[11]

## V.  Proposed Defendants 4-11, the Named Members of the Safer Federal Workforce Task Force

In addition to the aforementioned NLRB officials, Plaintiff respectfully proposes that the members of the Safer Federal Workforce Task Force (SFWTF), an entity created by Executive Order on January 20, 2021[12] should likewise be added as party defendants. In Executive Order No. 14043, the Defendant delegated responsibilities for creating further guidance to the SFWTF, comprised of:

(i)  Kiran Ahuja, the Director of the Office of Personnel Management, 1900 E St NW, Washington, DC 20415, who serves as Co-Chair;

(ii)  Robin Carnahan, the Administrator of General Services, 1800 F Street NW; Washington, D.C., who serves as Co-Chair;

(iii)  Jeff Zients the COVID-19 Response Coordinator, 1600 Pennsylvania Avenue Washington DC, who serves as Co-Chair;

---

[9] NLRB FY2020 Performance and Accountability Report
[10] 1015 Half Street SE Washington, D.C. 20570-0001
[11] See Defendant's Response to Plaintiff's Motion for a Preliminary Injunction, and its Appendix.
[12] See https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/20/executive-order-protecting-the-federal-workforce-and-requiring-mask-wearing/

(iv)     Neera Tanden, the Director of the Office of Budget and Management, 725 17th St NW, Washington, DC 20503;

(v)      L. Eric Patterson, the Director of the Federal Protective Service, 245 Murray Lane, SW. Washington, DC 20528-0075;

(vi)     James M. Murray, the Director of the United States Secret Service, 950 H St NW #7800, Washington, DC 20223;

(vii)    David Pekoske, the Administrator of the Federal Emergency Management Agency, 500 C St SW, Washington, DC 20024, and;

(viii)   Rochelle Walensky, the Director of CDC, 1600 Clifton Road, NE, Mail Stop D-72, Atlanta, Georgia 30333.

Because the Task Force has authority to issue and amend the Executive Order's guidance, its named members are proper parties to this litigation.  They are aware of the matter and will all be represented by the DOJ.

### VI.     Plaintiff has Standing to Bring the Cause of Action Described in His Origional Complaint against Defendant, the NLRB, and the Task Force, and His Claims are Ripe

Defendant's October 5, 2021 Answer attempts to frame Plaintiff's claim for injunctive relief against Defendant's Executive Order 14043 as a rote labor dispute with his employer, the NLRB, that should be precluded from district court review by the *Civil Service Reform Act* ("CSRA"). Here however, "the Court is not confronted with the sort of controversy falling neatly within the CSRA's scheme."[13]  As discussed more thoroughly in Plaintiff's original Complaint, Defendant's Federal Employee COVID-19 "vaccine" mandate at issue in the case at bar is an unprecedented, arbitrary, capricious, discriminatory, and politically-motivated, government-wide action – one that entirely guts the CSRA framework[14] by introducing a novel, unwanted (in

---

[13] *National Treasury Employees Union v. Devine*, 577 F. Supp. 738 (D.C.D.C. 1983), aff'd, 733 F.2d 114 (D.C. Cir. 1984) (union challenging OPM regulations in district court)

[14] See, e.g., 5 U.S.C. § 2301(b)(8)(A) ("Employees should be … protected against arbitrary action … or coercion for partisan political purposes…"); 5 U.S.C. § 2302(a)(2)(A)(xii) ("'personnel action' means … any other significant change in duties, responsibilities, or working conditions…;" ); 5 U.S.C. § 2302(b)(10)-(14)("Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority … (10) discriminate for or against any employee or applicant for employment on the basis of conduct which does not adversely affect the performance of the employee …; (14) access the medical record of another employee … in furtherance of any conduct described in paragraph [(10)]").

Plaintiff's case), and demonstrably futile (with respect to reducing COVID-19 transmission according to the CDC's own data) medical intervention as a new, government-wide, condition of employment. Thus, this case does not present "the typical sort of labor altercation between a federal employee and his federal employer," which would be precluded from district court action by the CSRA[15].

The relief sought by Plaintiff is impossible to obtain within the CSRA framework, but that does foreclose the possibility of obtaining through this action.[16] Plaintiff's claim stands appropriately before this Honorable Court, and the harm to the Plaintiff created by Defendant's arbitrary and coercive COVID-19 "vaccination" dictate is the variety of clear and present harm where injunctive relief is appropriate and has historically been granted by district courts, despite the government raising CSRA preclusion objections.[17]

The case at bar is distinguishable from *Elgin v. Dep't of Treasury,*[18] where a group of former federal employees who had been discharged for failing to comply with the *Military Selective Service Act*, 50 U.S.C.App. § 453, brought an action challenging the constitutionality of their terminations in federal district court. On appeal, a Supreme Court majority held that the statutory scheme under the CSRA provided the only venue for relief and dictated the only possible forms of relief. Thus, the former federal employees were forced to take their constitutional challenges first to the Merit Systems Protection Board, a quasi-judicial forum that, by statute, is incapable of making determinations as to the constitutionality of laws.

---

[15] Id.

[16] See *AFGE, AFL-CIO, Nat'l Council of Grain Inspection Locals v. FLRA*, 794 F.2d 1013, 1015 (5th Cir. 1986) (agreeing with the FLRA's admission that, under the CSRA, the FLRA has no power to review government-wide regulations promulgated outside of the agency and pointing to district court litigation as a "other means available" for challenge

[17] See, e.g., *Nat. Treasury Emp. Union v. Devine*, 733 F.2d 114 (D.C. Cir. 1984); *Nat. Treasury Emp. Union v. Chertoff*, 385 F. Supp. 2d 1 (D.D.C. 2005).

[18] Elgin v. Dep't of Treasury, 567 U.S. 1, 9–10 (2012)

Despite the fact that Elgin's claims for relief involved personnel action–employment termination–that was explicitly contemplated as the type of dispute appropriate for administrative adjudication under the CSRA,[19] Justice Alito, joined by Justices Ginsburg and Kagan, issued the following dissent:

> The problem with the majority's reasoning is that petitioners' constitutional claims are a far cry from the type of claim that Congress intended to channel through the Board. The Board's mission is to adjudicate fact-specific employment disputes within the existing statutory framework. By contrast, petitioners argue that one key provision of that framework is facially unconstitutional. Not only does the Board lack authority to adjudicate facial constitutional challenges, but such challenges are wholly collateral to the type of claims that the Board is authorized to hear.
>
> The majority attempts to defend its holding by noting that, although the Board cannot consider petitioners' claims, petitioners may appeal from the Board to the Federal Circuit, which does have authority to address facial constitutional claims. But that does not cure the oddity of requiring such claims to be filed initially before the Board, which can do nothing but pass them along unaddressed, leaving the Federal Circuit to act as a court of first review, but with little capacity for factfinding.
>
> Because I doubt that Congress intended to channel petitioners' constitutional claims into an administrative tribunal that is powerless to decide them, I respectfully dissent.

Id. at 2141.

Although Justice Alito's analysis did not carry the day in *Elgin*, his argument that there must be logical limits to the scope of CSRA preemption is undeniable when applied to the instant case. While the constitutional claims in *Elgin* connected to personnel action may have been "a far cry" from the type of claim that Congress intended to channel through the MSPB, Plaintiff's claims in the present case are wholly incompatible for adjudication within that system where the Defendant's government-wide mandate poisons the entire system.

*Elgin* is further distinguishable from the case at bar in that there, the plaintiff's challenge was to a law passed by the Legislative Branch and enforced by the Executive Branch. Under that scenario, the quasi-judicial forum operated by the Executive Branch was a fair, if not practical, forum for advancing a

---

[19] See 5 U.S.C. § 7512 (Personnel actions covered by the CSRA include: "(1) a removal; (2) a suspension for more than 14 days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of 30 days or less…").

claim prior to review by the Judicial Branch.  In the instant case, however, Plaintiff opposes the use of the Executive Branch-controlled quasi-judicial forum for his challenge to a government-wide Executive Branch decision. This important fact distinguishes the case at bar from *Elgin.*

Furthermore, the case is importantly distinguishable from those where courts have found that federal employee plaintiffs must bring their challenges to Executive Branch actions into the Executive Branch's own quasi-judicial forum.  For example, in *Crane v. Napolitano*,[20] employees challenged an internal agency directive that purportedly compelled agency employees to violate federal law. Certainly, some suspicion of the fox guarding the henhouse might be warranted where the MSPB functions as a forum to adjudicate alleged misdeeds of a Department Secretary, where the President had ultimate control over both the Secretary (who had issued the directives) and the employees of the MSPB who would investigate and adjudicate plaintiffs' claims. However, Congress was cognizant that such conflicts of interests were possible, and it sought to fortify the independence of the adjudicating employees through the various firewalls and procedural safeguards to avoid a backdoor spoils system.

Indeed, the MSPB system was designed by Congress to be a fair and impartial system for adjudication—even for a President's political enemies. This was true in theory in *Crane*, because the purportedly illegal directive only applied to a subset of the President's employees in one agency. To the extent that compliance with the directive constituted a political or ideological litmus test, that litmus test was limited to one agency where members had available administrative remedies through other agencies not subject to the litmus test. In the present case, the litmus test has metastasized across the entirety of the Executive Branch of the Federal Government.

---

[20] *Crane v. Napolitano*, No. 3:12-CV-3247-O, 2013 WL 8211660 (N.D. Tex. July 31, 2013)

The importance of the personnel involved in influencing employment decisions should not be underestimated. When these issues have been studied, scholars have found that the preferences of proposing officials are exceedingly determinative for final outcomes.[21] Indeed, the Plaintiff's chance at a fair shake from reviewing agencies whose own employees are being simultaneously subjected to coercive conditions of employment and tied up in the CSRA's administrative review process is completely undermined.

As described in Plaintiff's original Complaint, there are other important infected arms of the Executive. Defendant will challenge Plaintiff, now or later, by making reference to the studies and declarations of the very agencies that he controls. This renders the playing field unlevel, by design, but the independence of these agencies becomes a farce if Defendant, through executive action,  is freely permitted to unilaterally drive out the dissidents. FDA scientists Phillip Krause and Marion Gruber recently stepped down due to their objections to the Defendant's push for booster shots[22]. How many more will quit or be fired for refusal to become or remain "fully vaccinated"?

Thus, this case is unlike any cited by Defendant, and the broad sweep of the executive action in the case at bar will prevent Plaintiff from obtaining a fair and neutral forum as envisioned by Congress when it drafted the CSRA.  It is for these reasons that the current forum is appropriate.

---

[21] See Cole Taroot, The Influence of Administrative Law Judge and Political Appointee Decisions on Appellate Courts in National Labor Relations Board Cases, 27 October 2013 https://onlinelibrary.wiley.com/doi/epdf/10.1111/lapo.12013 (Though the ideology of the court plays a role in its decision making, cues from ALJ decision making and that of the Board weigh more heavily in appellate court outcomes.)

[22] They published the following article five days after the Order issued: Considerations in Boosting COVID-19 Vaccine Immune Responses (Sep. 13, 2021), available at https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(21)02046-8/fulltext  (last visited Oct. 6, 2021) ("Careful and public scrutiny of the evolving data will be needed to assure that decisions about boosting are informed by reliable science more than by politics.").

## VII.    Conclusion

Thus, in light of the foregoing, Plaintiff respectfully moves this Honorable Court to amend to Plaintiff's Complaint to add the aforementioned party defendants, or, in the alternative, provide leave for the Plaintiff to Amend his original Complaint.

Respectfully submitted this 29th day of September,

By:   *[signature]*

-------------------------------------
David A. Foley
Texas Bar No. 24122807
David.Foley.JMJ@proton.com
(682)325-8378
1542 Wayside Dr.
Keller, Texas

By:   *[signature]*

-------------------------------------
Daniel S. Flickinger
Alabama State Bar No. 9539N77F
dflick@gmail.com
205-470-6997
P.O. Box 36956
Hoover, AL 35236

## Certificate of Conference

I certify that I, David Foley, Plaintiff in this case, attempted to confer with counsel for Defendant with regards to this motion by the emailing counsel a copy of the Motion and Order at 10:30 and by leaving a voice message with counsel thereafter. Counsel for Defendant requested time to formulate its position on the motion, but due to constraints on Plaintiff's time by way of obligations unrelated to this lawsuit and due to the urgency of the matter, Plaintiff has filed this motion without obtaining the position of Defendant. At Defendant's request, it is noted for the record that Plaintiff afforded Defendant only 90 minutes to formulate his position before filing the Motion. Given that Defendant's position has not been obtained,  the Motion should be regarded as an opposed by default.

-----------------------------------
David A. Foley
Texas Bar No. 24122807
David.Foley.JMJ@proton.com
(682)325-8378

## Certification of Service

I certify that I have served the above by virtue of electronic service on all parties via the e-file system.

----------------------------

David A. Foley
Texas Bar No. 24122807
David.Foley.JMJ@proton.com
(682)325-8378
1542 Wayside Dr.
Keller, Texas